UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HAYDEN CRAWFORD, individually
and on behalf of all others similarly
situated,

     Plaintiff,

v.

THE PROGRESSIVE CORPORATION,
PROGRESSIVE SELECT INSURANCE CO.,

     Defendants.

_____/

CASE NO.: 3:20-CV-05538

JURY TRIAL DEMAND

## **CLASS ACTION COMPLAINT**

Plaintiff, Hayden Crawford (Plaintiff), individually and on behalf of all others similarly situated, files this Class Action Complaint against The Progressive Corporation and Progressive Select Insurance Co., (Progressive Select) (collectively, Defendants) and in support states the following:

## **NATURE OF THE ACTION**

1.    This is a class action lawsuit by Plaintiff, the named insured under an automobile policy issued for private passenger auto physical damage (the "Insurance Policy"),[1] including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or "ACV." The ACV of a vehicle equates to the cost to replace the vehicle, taking into account depreciation and physical condition, and such cost includes mandatory state and local costs and fees (Full Total Loss Payment or "FTLP") required to replace the vehicle.

---

[1] Plaintiff's Insurance Policy is attached hereto as Exhibit A.

2.      Defendants are a private passenger auto insurance carrier operating in Florida. One of the coverages Defendants offer is comprehensive and collision coverage. Upon information and belief, Defendants systematically underpaid not just Plaintiff but thousands of other putative class members ("Class Members") amounts Defendants owed its insureds in ACV payments after the total loss of a vehicle insured with comprehensive and collision coverage.

3.      This lawsuit is brought by the Plaintiff, individually and on behalf of all other similarly situated insureds, who suffered damages due to Defendants' practice of refusing to make full ACV payment to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendants fail to include state and local title and tag transfer in its calculation of ACV when making full total loss payment to its insureds.

4.      Plaintiff brings a claim for breach of contract based on Defendants' practice of failing to include title and tag transfer fees, despite its contractual obligation to do so.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and Plaintiff and Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

6.      Venue is proper in this Court in that Defendants conduct business here and are subject to personal jurisdiction in this District. Further, Defendants sell auto insurance policies within Florida and in this District.

2

## THE PARTIES

7.      At all times material hereto, Plaintiff was a citizen of the State of Florida and domiciled in Okaloosa County, Florida.

8.      At all relevant times, The Progressive Corporation was a corporation located in the State of Ohio and authorized to transact insurance in the State of Florida and conducting a substantial part of its business in Okaloosa County, Florida. The Progressive Corporation's principal place of business and headquarters are both located at 6300 Wilson Mills Road, Cleveland, Ohio.

9.      At all relevant times, Progressive Select Insurance Co.  was a corporation located in the State of Ohio and authorized to transact insurance in the State of Florida and conducting a substantial part of its business in Okaloosa County, Florida.  Progressive Select Insurance Company's principal place of business is located at 6300 Wilson Mills Road, Cleveland, Ohio.

10.      Upon information and belief, at all relevant times, the Defendants were present and doing business in the State of Florida, and transacted, solicited and conducted business in the State of Florida and derived substantial revenue from such business. The Defendants expected or should have expected that their acts would have consequences within the United States of America, and the State of Florida.

## FACTUAL ALLEGATIONS

11.      Progressive Select Insurance Co. is a wholly-owned subsidiary of The Progressive Corporation.

12.      Progressive Select handles and adjusts claims, sets policies and procedures, sets the premiums, and is responsible for the policy language and claims adjustments.

13.     Consumers, including Plaintiff, contract with Progressive Select by agreeing to pay a premium in exchange for an insurance policy.

14.     Progressive Select uses and issues the same Policy Form language for Plaintiff and all Class Members ("Insurance Policy").

15.     In the Insurance Policy, Defendants' standardized and uniform policy language promises, upon the occurrence of a total loss to an insured vehicle, to pay the ACV of the insured vehicle to the insured.

16.     Defendants' standardized policy language as to coverage for ACV of total loss vehicles is present in every auto policy issued by Defendants in Florida during the relevant time period.

17.     Under the policy and applicable state law, ACV includes an obligation to pay state and local fees for total loss vehicle comprehensive and collision coverage (previously defined herein as FTLP). Such fees include title transfer fees and tag transfer fees, each of which are mandatory fees imposed by the State of Florida.

18.     The promise to pay ACV – unlike a true Replacement Cost provision, which requires payment of actual costs incurred and does not allow for deductions for depreciation or physical condition – allows for deductions based on the depreciation and condition of the vehicle, but does not require costs to be incurred. Instead, it is a predictable amount upon which Defendants and insureds can rely. The ACV of a vehicle is independent from a) the amount originally paid, if any, for the total-loss vehicle, and b) the amount paid, if any, to replace the total-loss vehicle.

19.     Because the ACV of a vehicle takes into account a) depreciation, b) condition, and c) costs reasonably likely to be incurred in vehicle replacement, the promise to pay the

ACV of the total-loss vehicle is a promise to pay the underlying adjusted vehicle value,[2] plus sales tax (calculated as the applicable percentage of the adjusted vehicle value), plus $75.25 for title transfer fee, plus $4.60 for tag transfer fee, less any applicable deductible and salvage retention (FTLP).

20.     At all times material hereto, Plaintiff owned a 2018 Ford F150 (the "Insured Vehicle").

21.     At all times material hereto, the Insured Vehicle was insured under the Insurance Policy issued by Defendants.

22.     On or about November 5, 2019, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendants, claim number 19-4777973-01 (the "Claim"). Plaintiff's vehicle was deemed a total loss.

23.     Following the filing of the Claim, a third-party vendor Mitchell International, Inc. ("Mitchell") determined that the Insured Vehicle had a base vehicle value of $33,998.04 with aftermarket parts of $235.00 for a market value of $34,233.04. The Mitchell report proceeded to determine settlement adjustments by adding on 6.000% in tax and then an additional tax of .5000% of $5,000.00. *See* **Exhibit B** at 1 (Market Valuation Report).

24.     No amount for title transfer fee or tag transfer fee was included in the amount listed in the Mitchell Market Valuation Report. *See Id.* at 1.

25.     Defendants determined the owed payment to be $35,862.02 to Plaintiff. *See* **Exhibit B** (Market Valuation Report).

---

[2] The adjusted vehicle value, or the appraised value, is the base value (i.e., after deducting for depreciation due to age, mileage, etc.) plus or minus amounts attributable to physical condition.

26.     Defendants' payment of $35,862.02 did not include amounts for title transfer or tag transfer fees. Additional payments similarly did not include amounts for title transfer or tag transfer fees.

27.     Counsel for Plaintiff sent a letter on February 13, 2020 to Progressive Select, requesting an additional $81.25, reflecting the "actual cost to purchase a comparable vehicle," which includes the title transfer fees, $75.25, and tag transfer fees $6.00. Progressive Select did not respond to this request.

28.     Title transfer fees and tag transfer fees are mandatory applicable fees that must be paid to replace any vehicle in the State of Florida. *See* 4A Fla. Jur 2d Automobiles and Other Vehicles § 149.

29.     Upon information and belief, Defendants, pursuant to a standard and uniform business practice, never pays insureds FTLP, including title and tag transfer fees, after a total-loss to an insured vehicle, notwithstanding its contractual obligation to do so.

30.     Florida law requires that all vehicles be properly titled and registered in order to be legally driven on Florida roadways. The fee to transfer title to a vehicle is, at minimum, $75.25.[3]

31.     Florida law requires that all vehicles have a proper license plate (or tag) in order to be legally driven on Florida roadways. The fee to transfer license plate or tag is no less than $4.50.[4] For Plaintiff that amount totaled $6.00.

32.     Defendants breached their Insurance Policy with Plaintiff by failing to pay any amount for title transfer fees and tag transfer fees when it paid Plaintiff what it purported to be the ACV of the total loss of the Insured Vehicle.

---

[3] *See* Schedule of Fees at https://www.flhsmv.gov/fees/.
[4] *See id.*

33.     Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policy was in effect and operational at the time of the accident.

## THE INSURANCE POLICY

34.     Pursuant to the Insurance Policy, under the section entitled "Damage to A Vehicle" Progressive Select "will pay for sudden, direct and accidental loss to a 'covered auto' or 'non-owned auto,' and its custom parts or equipment, resulting from collision." *See* **Exhibit A** at 27.

35.     The definition of "covered auto" includes "any auto . . . shown on the declarations page for the coverages applicable to that auto or trailer." *Id.* at 1.

36.     Under a provision entitled "Limits of Liability," Progressive Select states, in relevant part, that the "limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of:

> a. the *actual cash value* of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
> b. the amount *necessary* to replace the stolen or damaged property reduced by the applicable deductible;
> c. the amount necessary to repair the damaged property to its pre-loss physical condition reduced by the applicable deductible; or
> d. the Stated Amount shown on the declarations page for that covered auto."

*Id.* at 32 (emphasis added).

37.     ACV is not defined in the Insurance Policy.

38.     The policy language applies to all covered autos irrespective of ownership interests, whether owned, financed or leased.

39.     In turn, the Insurance Policy does not exclude: (1) vehicle title and tag fees from ACV; or (2) any provision deferring or conditioning payment of vehicle title and registration fees for any purpose whatsoever.

40.     According to Defendants' policy, insureds are owed the same amount – actual cash value of the insured vehicle – whether or not they replace the vehicle at all. Insureds are owed the same amount – actual cash value – whether or not they paid (or how much they paid) for the total- loss vehicle. Instead, in exchange for the premiums paid by the insureds, Defendants promise to pay a predictable amount – the actual cash value of the insured vehicle, including tag and transfer fees – irrespective of payments related to either the total-loss vehicle or the replacement vehicle (if any).

## PAYMENT OF SALES TAX AND MANDATORY FEES

41.     Fla. Stat. § 626.9743 defines ACV and states that "[t]he insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax . . ."

42.     Controlling case law from the Florida Supreme Court, Florida's appellate courts, the 11th Circuit Court of Appeals, and Florida's federal district courts hold that the term "actual cash value," when undefined in an Insurance Policy, should be defined as the repair or replacement cost minus depreciation – a definition which would include sales tax and title and transfer tag fees necessarily incurred upon replacement of the insured vehicle. *See e.g., Trinidad v. Florida Peninsula Ins. Co.*, 121 So.3d 433, 438 (Fla. 2013) ("[a]ctual cash value is generally defined as 'fair market value' or '[r]eplacement cost minus normal depreciation,' where depreciation is defined as a 'decline in an asset's value because of use, wear, obsolescence, or age.'") (*quoting* Black's Law Dictionary 506, 1690) (9th Ed. 2009); *Goff v. State Farm Florida Ins. Co.*, 999 So 2d 684, 689 (Fla. 2d DCA 2008) (undefined ACV

8

is calculated as full replacement cost minus depreciation); *Mills v Foremost Ins. Co.*, 511 F.3d 1300, 1306 (11th Cir. 2008) (holding that fees such as sales tax, tag and title transfers fees "should be included in an ACV payment if it is 'reasonably likely' that the insured would incur" such cost upon replacement) (*quoting Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp.2d 928, 934 (N.D. Tex. 2001)); *Roth v. Geico General Ins. Co.*, Case No. 16-62942-CIV-Dimitrouleas (S.D. Fla. June 14, 2018) D.E. 247 at 9 ("[T]he court concludes that [sales tax and title transfer fees] are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.") (footnote omitted); *Bastian v. United Services Auto. Ass'n*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (agreeing with the 11th Circuit's "easily reached conclusion [in Mills] that state and local taxes are part of the cost of replacing an item" and thus part of the ACV); *Glover v. Liberty Mut. Ins. Co.*, 418 F. Supp. 3d 1161, 1169 (S.D. Fla. 2019) (holding that plaintiff "plausibly alleges – consistent with the statute that is incorporated in the Insurance Policy – that failure to include mandatory state fees constitutes a breach of the promise to pay ACV").

43.     In interpreting insurance policies, Florida courts begin with the plain language of the policy as bargained for by the parties. *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016). Policy terms are given their plain and ordinary meaning and should be read in light of the skill and experience of ordinary people. *Id.* But, "if the relevant policy language is susceptible to more than one interpretation, one providing coverage and another limiting coverage, the Insurance Policy is considered ambiguous." *See Auto Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Courts should interpret policy ambiguities "liberally in favor of the insurer and strictly against the insured who prepared the policy." *See Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So.

2d 467, 470 (Fla. 1993). Moreover, Florida law is equally well-settled that coverage clauses are "construed in the broadest possible manner" in order to effect "the greatest extent of coverage." *See e.g., Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So.2d 565 (Fla. 2nd DCA 1984) (coverage must be construed broadly and exclusions narrowly).

44.     Title transfer fees and tag transfer fees, along with sales tax, are examples of elements constituting the FTLP owed to insureds in the event of a total-loss.

45.     By operation of law and in the view of a reasonable insured, Defendants' policy promises to provide costs to be incurred upon replacement of the vehicle.

46.     Nevertheless, Defendant declines to include all such fees and costs in making ACV payment to total-loss insureds – specifically tag and title transfer fee amounts – thereby breaching its contracts with insureds.

## CLASS ALLEGATIONS

47.     Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23.

48.     Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendants' failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policies.

49.     Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

50.     Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of FRCP  23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under the Defendants'

standardized policy language, Plaintiff and the class members are owed FTLP upon the total

loss of an insured vehicle; and (b) whether Defendant has breached its insurance contracts

with the Plaintiff and the class members by failing to make the FTLP upon the total loss of

an insured vehicle.

51.     Plaintiff's claims are typical of the claims of all other members of the class

because all such claims arise from the allegedly improper failure by Defendants to make a

FTLP upon the total loss of insured vehicles.

52.     Plaintiff and his counsel will fairly and adequately protect and represent the

interests of each member of the class.

53.     Plaintiff is committed to the vigorous prosecution of this action and has

retained competent counsel experienced in prosecuting and defending class actions.

Plaintiff's counsel has successfully litigated other class action cases similar to that here and

have the resources and abilities to fully litigate and protect the interests of the class.

54.     Pursuant to Rule 23(b)(3), a class action is superior to the other available

methods for a fair and efficient adjudication of the controversy because, among other reasons,

it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it

will conserve party and judicial resources and facilitate the consistency of adjudications.

Furthermore, because the damages suffered by individual Class Members is relatively small,

their interests in maintaining separate actions is questionable and the expense and burden of

individual litigation makes it impracticable for Class Members to seek individual redress for

the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the

management of this case that would preclude its maintenance as a class action.

55.     Plaintiff brings this action as class representative, individually and on behalf

of all other persons or entities similarly situated, more specifically defined as follows:

11

> All insureds, under any Florida policy issued by Progressive Select Insurance Company, The Progressive Corporation or its subsidiaries with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the five-year time period prior to the date on which this lawsuit was filed until the date of any certification order.

56.     The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

57.     Certification of the above classes is also supported by the following considerations:

    a.   The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;

    b.   Counsel in this class action is not aware of any previously filed litigation against Defendants in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and

    c.   No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

58.     Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendants are among the largest motor vehicle insurers in the State of Florida and writes hundreds of millions of dollars of physical damage coverage premiums, the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the

class of persons affected are otherwise so numerous that joinder of all class members is impractical.[5] The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized insurance policy language, and results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity is established.

59.     Fed. R. Civ. P. 23(a)(2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendants and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include, but are not limited to the following: (a) whether under Defendants' standardized policy language, Plaintiff and Class Members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendants breached its insurance contracts with Plaintiff and the Class Members by failing to make FTLP upon the total loss of an insured vehicle.

60.     Fed. R. Civ. P. 23(a)(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendants' uniform misconduct. Further, Plaintiff and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including tag/title transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members.

---

[5] Further, there are approximately 400,000 vehicle crashes each year in Florida. *See* https://www.flhsmv.gov/traffic-crash-reports/crash-dashboard/.

61.     Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein.

62.     Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members.  Further, and as stated  previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small,  their  interests in  maintaining  separate  actions is questionable and the expense and burden  of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

## COUNT I: BREACH OF CONTRACT

63.     Paragraphs 1-60 are hereby incorporated by reference.

64.     This count is brought by Plaintiff individually and on behalf of the Class Members.

65.     Plaintiff was a party to a contract, the Insurance Policy, with Defendants as described herein. *See* **Exhibit A**. All Class Members were parties to an insurance contract with Defendants containing materially identical terms.

66.     The interpretation of Plaintiff's and all Class Members' insurance policies is governed by Florida law.

67.     Plaintiff and all Class Members made a claim determined by Defendants to be a first- party total loss under the insurance policy and determined by Defendants to be a covered claim.

68.     Defendants, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their

duties and conditions under their respective insurance policies for each to be paid on his or her total loss.

69.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class Member were owed the ACV of the vehicle.

70.     Defendants failed to make a FTLP (including mandatory fees) and thus failed to pay ACV owed under the Insurance Policy to Plaintiff and every Class   Member.

71.     Defendants' failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Class Member.

72.     As a result of said breaches, Plaintiff and the class members are entitled to sums representing the benefits owed for the full ACV payment, including title transfer fees, and tag transfer fees, as well as costs, prejudgment and post judgment interest, and other relief as is appropriate.

73.     In addition, Plaintiff and the class members are entitled to an award of attorneys' fees and costs pursuant to § 627.428 Fla. Stat. and all other statutory or contractual provisions allowing for attorney's fees and costs.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands relief and judgment as follows:

a.   For an Order certifying this action as a Class Action on behalf of the Class described above;

b.   For an award of compensatory damages for the Class in amounts owed by Defendants;

c.   For all other damages according to proof;

15

d.  For an award of attorneys' fees and expenses as appropriate pursuant to

applicable law, including § 627.428 Fla. Stat.;

e.  For costs of suit incurred herein;

f.  For pre- and post-judgment interests on any amounts awarded; and

g.  For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: June 10, 2020.                   Respectfully submitted,

                                        s/ Bryan F. Aylstock
                                        Bryan F. Aylstock, FL Bar No. 78263
                                        Justin G. Witkin, FL Bar No. 109584
                                        Neil D. Overholtz, FL Bar No. 188761
                                        Caitlyn Prichard Miller, FL Bar No. 126097
                                        AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC
                                        baylstock@awkolaw.com
                                        jwitkin@awkolaw.com
                                        noverholtz@awkolaw.com
                                        cmiller@awkolaw.com
                                        17 East Main Street, Suite 200
                                        Pensacola, FL 32502
                                        Phone: (850) 202-1010
                                        Facsimile: (850) 916-7449


                                        Robert Hadley Sanders, III
                                        Florida Bar No. 74414
                                        HADLEY SANDERS, P.A.
                                        rhs@hadleysanderslaw.com
                                        314 South Baylen Street, Suite 112
                                        Pensacola, FL 32502
                                        Telephone: (850) 466-8349